FILED

2021 Aug-24  PM 04:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **ANGELA BREWER,** | } | |
| **o.b.o. R.T.C., a minor child,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No. 4:20-CV-00714-RDP** |
| | } | |
| **KILOLO KIJAKAZI, Acting** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

**<u>MEMORANDUM OF DECISION</u>**

Plaintiff Angela Brewer brings this action on behalf of her grandson, R.T.C., pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability and Children's Supplemental Security Income ("CSSI"). 42 U.S.C. §§ 405(g), 1383(c). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed in part and remanded in part.

**I.     Proceedings Below**

Plaintiff filed applications for disability and CSSI on behalf of R.T.C. on May 1, 2017, alleging that he became disabled beginning on April 5, 2017. (R. 194-99). Plaintiff's applications were denied initially and upon review. (R. 115-27). On July 3, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 134-36). That request was granted, and a hearing was conducted on February 19, 2019 before ALJ Michael Mannes. (R. 74-114, 183-89, 377-97).

Plaintiff, R.T.C.'s grandmother he has lived with since birth, her attorney, and R.T.C. were present at the hearing. (R. 74).

In his decision, the ALJ determined that from April 5, 2017 through April 10, 2019, R.T.C. had not been under a disability within the meaning of Section 1614(a)(3)(C) of the Act. (R. 24). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on May 8, 2020, the ALJ's decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. (R. 1-6).

At the time of the hearing, R.T.C. was eight years old. (R. 81). Plaintiff alleges R.T.C.'s disabilities -- attention deficit/hyperactivity disorder ("ADHD"), anxiety, obsessive compulsive disorder ("OCD"), and oppositional defiant disorder ("ODD") -- started April 5, 2017. (R. 117). During his alleged period of disability, R.T.C. received medical care primarily from Carr Mental Wellness ("Carr Wellness") and Glenwood Autism and Behavioral Health Care Center ("Glenwood"). (R. 412-18, 502-31).

On November 10, 2016, R.T.C. underwent a psychological evaluation at Glenwood. (R. 502-09). According to medical records, he "presented appropriately groomed and dressed, . . . . friendly . . . participating in reciprocal conversations, offering information about himself . . . . [and] using age-appropriate language." (R. 504). Because R.T.C. "demonstrated a good amount of motivation and appeared to put forth his best effort [the results were] considered to provide an accurate representation of cognitive, social, emotional, and behavioral function at [that] time." (*Id.*). In their diagnostic impression, Glenwood described R.T.C.'s symptomology as "consistent with [ADHD]" and his mood "demonstrates severe recurrent temper outbursts that are out of proportion in intensity and duration to the situation [and] appears to be more consistent with a diagnosis of Disruptive Mood Dysregulation Disorder ["DMDD"]." (R. 507). It was recommended

2

that R.T.C. "continue to be followed on an outpatient basis by a psychiatrist for medication management, receive consistent medication management at home [and meet] with a therapist." (R. 508).

On April 18, 2017, R.T.C. was seen at Carr Mental Wellness for an initial psychological evaluation. (R. 416-18). Plaintiff accompanied R.T.C. and reported a history of ADHD, as well as stating "[h]e was potty trained at age 6 [but] continues to have BM accidents, . . . . is very moody, raging (*sic*) from being happy to 'super angry' . . . . aggressive towards the other children . . . . assaulted [Plaintiff] . . . . does not sleep without melatonin . . . . appetite is chronically poor. . . . [and he] threatens to harm himself when he becomes upset and will punch himself out of frustration." (*Id*.). After the initial assessment was completed, Carr Wellness diagnosed R.T.C. with ADHD and DMDD, changing his ADHD prescription from Adderall to Vyvanse, and prescribing Abilify for his DMDD. (R. 417). On May 9, 2017, R.T.C. was accompanied by his grandfather for a follow up appointment, where he reported "that [A]bilify caused nausea and vomiting [so] they stopped it in 2-3 days . . . . [V]yvanse seems to be increasing aggression . . . . [and] [h]is defiant, violent behaviors, and volatile moods continue." (R. 414-15). Because R.T.C. was "not stable on current medications," his ADHD prescription was changed back to Adderall and he was prescribed Saphris (instead of Abilify) for his mood. (*Id*.).

On June 6, 2017, Plaintiff reported R.T.C. was "a little better," but stated he had "minimal improvement in behavior . . . . continues to have 'major outbursts and rages,' . . . continues to be defiant, argumentative, and 'mean' [but] is less hyper and impulsive." (R. 510). Since he was "stable on current medications," Carr Wellness did not change his current prescriptions but did add Kapvay at bedtime for his ADHD to help "implement a more stable sleep pattern." (R. 510-

11). On August 1, 2017, R.T.C.'s medical records described him as "pleasant, cooperative, friendly, [] happy, irritable, [and] elevated" but had poor insight and judgment. (R. 512). While Plaintiff did report that R.T.C. was "less hyper and impulsive, . . . [h]e still poops on himself, [has] 'major outbursts and rages,' [and] continues to be defiant, argumentative, and 'mean.'" (*Id*.). R.T.C. was described as "stable on current medications," but apparently was taken off Kapvay, which was meant to address his sleep issues, despite medical records showing his sleep was still "poor." (R. 512-13). On October 24, 2017, R.T.C.'s grandfather reported "attending a parenting program at Glenwood . . . that has been helpful [and] notes improvements in tantrums – these are less frequent and do not last long [and] [h]e is also sleeping better [and] earned the AB honor roll the first 9 weeks of school." (R. 514). No changes were made to R.T.C.'s medications. (R. 515).

In January 2018, R.T.C.'s Adderall dosage was increased. (R. 517). Plaintiff reported that R.T.C. was "doing alright, . . . [h]is behavior at school is 'better than at home,' . . . [but he] can be defiant and disrespectful, [and] . . . often calls [Plaintiff] 'bad names.'" (R. 516). On April 12, 2018, no changes were made to R.T.C.'s prescription, he was still "doing well in school, . . . has 'great grades,' [and] his behavior slightly improved at home, [but] does still get 'a little defiant' at times." (R. 518). Plaintiff reported on July 31, 2018, that R.T.C. continued to be "defiant and argumentative at times" but was "managing his anger and frustration better [and] sleeping well." (R. 520). However, in October 2018, R.T.C. was reported to be "not paying attention, cannot be still, . . . [is] more disruptive, [and] his grades have declined." (R. 523-24). R.T.C.'s Adderall dosage was increased. (*Id*.). A week later, R.T.C. had still not improved so his ADHD prescription was changed from Adderall to Adzenys, because the Adderall had failed even with multiple doses and he had "gradually worsened over time [and] eventually started having chest pains." (R. 526,

4

28). In addition, R.T.C. was diagnosed with Autistic Disorder. (R. 528). On November 28, 2018, which was R.T.C.'s last appointment in 2018, he was still having problems focusing but his medications were not changed. (R. 529-30). Throughout 2017 and 2018, R.T.C.'s diagnoses remained the same: ADHD and DMDD. (R. 415, 417, 511, 513, 517, 519, 521, 524, 528, 530).

On June 7, 2019, Plaintiff's counsel submitted an electronic request to the Appeals Council for review of the ALJ's decision. (R. 190-93). Plaintiff also requested more time to submit additional evidence. (R. 192). Plaintiff's request for more time was granted on June 16, 2019. (R. 33-35). This additional evidence submitted included the following: (1) one progress note from Carr Wellness dated November 28, 2018, (2) four progress notes from Carr Wellness dated January 10, 2019 to April 24, 2019, (3) a psychological evaluation from Glenwood dated July 2-3, 2019, (4) a Functional Impairment Questionnaire filled out by Carr Wellness dated July 29, 2019, and (5) a Child's Mental Health Questionnaire from Cross Roads to Pathways Counseling dated September 4, 2019. (R. 38-73).

The Appeals Council denied Plaintiff's request for review finding the following: the November 28, 2018 progress note from Carr Wellness was duplicative; and the four progress notes from Carr Wellness dated January 10, 2019 to April 24, 2019, as well as the psychological evaluation from Glenwood dated July 2-3, 2019, did not show a reasonable probability of changing the outcome of the ALJ's decision. (R. 1-4). The Appeals Council did not take the Functional Impairment Questionnaire filled out by Carr Wellness dated July 29, 2019, or the Child's Mental Health Questionnaire from Cross Roads to Pathways Counseling dated September 4, 2019 into account, because it determined that neither of these related to the period at issue. (R. 2).

The four progress notes from Carr Wellness did not necessarily indicate deterioration but did show additional changes in R.T.C.'s medications due to "some worsening." (R. 45, 48, 51, 54). On January 10, 2019, in response to subjective complaints from R.T.C. that "he gets bored easily . . . doesn't get math . . . still can not focus [and] is getting in trouble at home," Carr Wellness continued his Adzenys prescription but increased his prescription of Saphris. (R. 53-55). Plaintiff and R.T.C. returned on March 5, 2019, when Carr Wellness changed R.T.C.'s prescription from Adzenys to Cotempla, which "addresses: emotional dysregulation, impulsivity, inattention, [and] distractibility." (R. 51-52). R.T.C.'s Saphris prescription was increased and then decreased at his follow up appointment on March 26, 2019. (R. 48, 51). In addition, since Plaintiff had stopped giving R.T.C. his Cotempla prescription because "[h]e was aggressive," Carr Wellness started him on Adderall again. (R. 47-48). Carr Wellness made changes to R.T.C.'s Adderall prescription at his final appointment on record, dated April 24, 2019.

R.T.C.'s diagnosis did not change in 2017 and 2018: ADHD and DMDD. (R. 45, 48, 51, 54). On March 5, 2019, Plaintiff reported that R.T.C. had "started hitting himself and scratching his arms and head." (R. 50). This behavior was further detailed at his April 24, 2019 appointment. (R. 44). R.T.C would "hit[] himself if he makes a bad grade" but is "finally getting into behavioral therapy." (*Id.*).

Carr Wellness's July 29, 2019 Functional Impairment Questionnaire addressed all six domains that an ALJ is called up to consider when determining functional equivalence. (R. 38-41). Carr Wellness found that Plaintiff had marked limitations in two domains (acquiring and using information and attending and completing tasks), an extreme limitation in one domain (interacting

and relating with others), and moderate limitations in two other domains (moving about and manipulating objects and caring for himself). (*Id.*).

## II.    ALJ Decision

"If you are under age 18," the pertinent Regulation defines disability as having "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906.

Disability for children is determined under a three-step test. 20 C.F.R. § 416.924(a); *see, e.g., Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999); *see also Ware v. Colvin*, 997 F. Supp. 2d 1212, 1216-17 (N.D. Ala. 2014). First, the ALJ must determine whether a claimant is "doing substantial gainful activity," and if so the ALJ "will determine that [the claimant is] not disabled." 20 C.F.R. § 416.924(b). Substantial activity "involves doing significant physical or mental activities," while gainful activity refers to "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972(a), (b); *see* 20 C.F.R. §§ 416.971-416.976. However, "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs" are not considered substantial gainful activity. 20 C.F.R. § 416.972(c).

Second, if the ALJ determines a claimant has not engaged in substantial gainful activity, he "will consider [the claimant's] physical or mental impairment(s) . . . to see if [the claimant has] an impairment or combination of impairments that is severe." 20 C.F.R. § 416.924(a). The ALJ will not consider an impairment to be severe if it "is a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c).

Absent a severe impairment, the ALJ "will determine that you are not disabled and not review your claim further." 20 C.F.R. § 416.924(a).

In the third and final step, the ALJ "will review [a] claim further to see if [a claimant has] an impairment(s) that meets, medically equals, or functionally equals [the Listing of Impairments ("listing(s)")] . . . . and . . . [its] duration requirement." 20 C.F.R. § 416.924(d); *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2. If a claimant has "an impairment(s) that meets or medically equals the requirements of a listing or that functionally equals the listings, and that meets the duration requirement, [the ALJ] will find [the claimant] disabled." 20 C.F.R. § 416.924(d)(1). The listings "describe[] impairments that cause marked and severe functional limitations." 20 C.F.R. § 416.925(a). "An impairment(s) causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings." 20 C.F.R. § 416.924(d).

Meeting the requirements of a listing means the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria of the listing." 20 C.F.R. § 416.925(d). However, a claimant's "impairment(s) cannot meet the criteria of a listing based only on a diagnosis." *Id*. For children, Part B of the listings   provides that "'listing-level severity' generally means the level of severity described in [20 C.F.R.] § 416.926a(a)." 20 C.F.R. § 416.925(b)(2)(ii). However, if an impairment meets a listing, the ALJ "will decide that [the claimant's] impairment is of 'listing-level severity' even if it does not result in marked limitations in two domains of functioning, or an extreme limitation in one, if the listing [the ALJ] appl[ies] does not requires such limitations to establish that an impairment(s) is disabling." 20 C.F.R. § 416.925(b)(ii). A claimant's "impairment(s) is medically equivalent to [the listings] . . . if it is at least equal in

severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). To functionally equal a listing, a claimant's "impairment(s) must be of listing-level severity; *i.e.*, it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."[1] 20 C.F.R. § 416.926a(a).

A marked limitation "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). On a "day-to-day [basis] functioning may be seriously limited when [the claimant's] impairment(s) limits only one activity or when the interactive and cumulative effects of [the] impairment(s) limit several activities." A marked limitation is "more than moderate" but "less than extreme" and it would be expected the claimant would have "standardized testing . . . scores that are at least two, but less than three, standard deviations below the mean." *Id*.

An extreme limitation "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). On a "day-to-day [basis] functioning may be very seriously limited when [the claimant's] impairment(s) limits only one activity or when the interactive and cumulative effects of [the] impairment(s) limit several activities." *Id*. An extreme limitation is "more than marked" and a rating only "give[n] to the worst limitations. However, 'extreme limitation' does not necessarily mean a total lack or loss of ability to function." *Id*. It would be expected that "standardized testing . . . scores[ ] are at least three standard deviations below the mean." *Id*.

---

[1] In making functional equivalence determinations, the ALJ will consider how the claimant functions "in terms of six domains. These domains are broad areas of functioning intended to capture all of what a child can or cannot do   . . . . The domains [the ALJ] use are: (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1).

When the ALJ is considering functioning equivalence, he "look[s] at how appropriately, effectively, and independently [the claimant] perform[s] [the] activities compared to the performance of other children [the claimant's] age who do not have impairment." 20 C.F.R. § 416.926a(b). The ALJ "will assess the interactive and cumulative effects of all of the impairments for which [he has] evidence, including any impairments [the claimant] [has] that are not 'severe.'" 20 C.F.R. § 416.926a(a). The ALJ "will consider all the relevant information in [the] case record that helps [them] determine [the claimant's] functioning, including [his] signs, symptoms, and laboratory findings, the descriptions . . . from [the claimant's] parents, teachers, and other people who know [him], and the relevant factors explained in §§ 416.924a,[2] 416.924b, and 416.929." 20 C.F.R. § 416.926(e)(1)(i). This includes medical and nonmedical sources. 20 C.F.R. § 416.924a(a).

When determining functional equivalence, the ALJ "will [first] look at the information [available] in [the] case record about how [the claimant's] functioning is affected during all of [his] activities . . . at home, at school, and in [the] community." 20 C.F.R. § 416.926a(b). Then, the ALJ "will look at how appropriately, effectively, and independently [the claimant] perform[s] [those] activities compared to the performance of other children [his] age who do not have impairments." *Id*. Because "[a]ny given activity may involve the integrated use of many abilities and skills . . . any single limitation may be the result of the interactive and cumulative effects of one or more impairments." 20 C.F.R. § 416.926a(c).

Here, in regard to medical evidence, the ALJ observed that:

> [R.T.C.] has been diagnosed with a number of mental impairments. He has been examined and sometimes has been noted by treatment provider as presenting with an irritable mood, a short attention span,

---

[2] The ALJ refers to the requirements in 20 C.F.R. § 416.926a(b)-(c) as the "whole child" approach. (R. 15; Doc. # 12 at 9) (explained in <u>Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule-the "Whole Child" Approach</u>, SSR 09-1P (S.S.A. Feb. 17, 2009)).

and poor insight and judgment. However, he has also been noted in treatment notes as presenting with appropriate grooming and dress, friendly, participating in many reciprocal conversations, offering information about himself, demonstrating fair judgment and insight, speaking using age-appropriate language, and testing with interruptions. He takes medication for his ADHD. His grandmother reported to treatment providers that he was doing a 'little better' and was 'less hyper and impulsive' with his medication. She also reported attending a parenting program at Glenwood and noted improvement in [R.T.C.]'s tantrums, specifically that they were less frequent and did not last as long.

(R. 16). The ALJ determined that R.T.C.: (1) had not engaged in substantial gainful activity since May 1, 2017, the application date; (2) had the following severe impairments: ADHD, anxiety, and ODD; and (3) did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of the listings. (R. 14-24). In reaching this conclusion, the ALJ found that R.T.C. had less than marked limitations in four domains[3] and no limitations in the other two domains.[4] The ALJ used Plaintiff's testimony and reports from two teachers "together with [R.T.C.'s] activities of daily life and the entire longitudinal record of evidence" to support his findings that R.T.C. "does not have an impairment or combination of impairments that result in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning." (R. 18-24).

## III. Plaintiff's Argument for Reversal

As the Commissioner points out, Plaintiff "does not plainly and prominently raise an issue for review, as Plaintiff simply parrots long quotes from the ALJ decision, along with long quotes

---

[3] (i) Acquiring and using information, (ii) Attending and completing tasks, (iii) Interacting and relating with others and (v) Caring for yourself. 20 C.F.R. § 416.926a(b)(1).

[4] (iv) Moving about and manipulating objects and (vi) Health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

from case law, without citing any facts or providing any analysis or discussion." (Doc. # 12 at 8). While admittedly not plain or prominent, Plaintiff has provided some discussion and/or analysis. But the ALJ is correct. Plaintiff has unfortunately done so by inserting long quotes from case law with similar issues, effectively burying any particularized arguments she may have and ignoring any discussion of how the law applies to the facts of this case. (Doc. # 11 at 21-26). Because Plaintiff has conflated multiple arguments in one section, the Commissioner viewed Plaintiff's arguments as "perfunctory." (Doc. # 12 at 8). However, the Commissioner's assertion that this rises to the level of Plaintiff waiving her claims, specifically those related to the ALJ's consideration of medical opinions and the additional evidence submitted to the AC, is overstated. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014), *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006), *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 n.3 (11th Cir. 1998).[5]

---

[5] The *Sapuppo*, *Outlaw* and *McClain* decisions were all cited by the Commissioner, in support of his assertions that Plaintiff waived her claims. However, in these cases, (1) the plaintiff did not mention the issue in their briefs at all, *Sapuppo*, 739 F.3d at 680 or (2) the plaintiff did not elaborate on the claim or provide citation to authority about the claim, *Outlaw*, 197 F. App'x at n.3 (citing *Cheffer v. Reno*, 55 F.3d 1517, 1517 n.1 (11th. Cir. 1995) (concluding that issue was waived, even though party's brief listed the issue in the statement of issues, because party provided no argument on the merits of the claim)); and (3) the defendant did not mention the alleged violation against them anywhere in their briefs, *McClain*, 138 F.3d at n.3.

While Plaintiff's counsel did not help his client's case with his unclear and heavily copied discussion of the issues, his failings do not rise to the level of waiving Plaintiff's claims. Unlike the cases cited by the Commissioner, Plaintiff did mention the issues in her brief. (Doc. # 11 at 1). In addition, Plaintiff did not just list them in the Errors of Law but elaborated on them. (*Id.* at 21, 24). It is arguable that Plaintiff's pages of quotes are not enough to constitute "elaboration," but it is important to remember that the court's "jurisdiction encompasses not only those issues that a party 'expressly refer[s] to' but also those 'impliedly intended for appeal.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1269 (11th Cir. 2015) (quoting *Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1080 (11th Cir. 2003)). For example, even if a claimant does not specifically argue that the ALJ failed to develop the record, the claimant has not waived that argument because "[i]t is impossible to review whether the ALJ's decision is supported by substantial evidence if the record is not fully and fairly developed;" therefore, "when [a claimant] challenge[s] whether there was substantial evidence supporting the ALJ's determination . . . a challenge to the sufficiency of the record was implied in his appeal." *Id.*; *see* Fed. R. App. P. 3(c)(1)(B). Because "Social Security courts are inquisitorial, not adversarial, in nature . . . . the [ALJ] has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel*, 245 F.3d

After devoting substantial effort to analyzing Plaintiff's arguments, the court understands Plaintiff to be presenting two arguments: (1) the ALJ failed to properly evaluate the records of Carr Wellness that were available to him,[6] therefore substantial evidence does not support his decision, and (2) the Appeals Council erred in its denying to review the ALJ's decisions because, contrary to its conclusion, the evidence submitted from Carr Wellness was new, material, and related to the period on or before the date of the hearing decision, and there was a reasonable probability that the additional evidence would change the outcome of the decision.[7]

Although difficult to follow, Plaintiff appears to claim that the ALJ failed to properly consider the medical records from Carr Wellness and Plaintiff's testimony. Her argument seems to be two-fold and aimed at step three of the ALJ's disability analysis. In general, Plaintiff claims the medical records from Carr Wellness were not properly considered. And, she specifically

---

1274, 1281 (11th Cir. 2001)).

[6] The parts of the record from Carr Wellness that were before the ALJ and that are at issue are dated April 18, 2017 through November 28, 2018. (Doc. # 11 at 24) (R. 414-18, 510-31). During this time, the records provided by Carr Wellness constitute other medical evidence such as medical history, diagnoses, and judgments about the nature and severity of R.T.C.'s impairments. (R. 414-18, 510-31). At no point in the record before the ALJ did Carr Wellness provide a statement on what R.T.C. could still do despite his impairments or statements on whether he has impairment-related limitations or restrictions in the six domains of functioning. (*Id.*). Therefore, there was no medical opinion evidence from Carr Wellness for the ALJ to even consider. *See* 20 C.F.R. § 416.913(a)(2), (3); *see Works v. Saul*, No 4:19-CV-1515, 2021 WL 690126, at *2-4, 15 (N.D. Ala. Feb. 23, 2021). As a result, the court will not address Plaintiff's discussion on medical opinions. (*See* Doc. # 11 at 21-23). Further, even if this was a valid argument, Plaintiff has not cited to controlling law. R.T.C.'s application was filed after March 2017, and thus the treating physician rule is inapplicable. *See* 20 C.F.R. § 416.920c.

[7] The Commissioner understood Plaintiff's "reference to submitting 'additional treatment records from Carr Mental Wellness'" as "a conclusory [assertion] that 'the submission of new records requires a remand.'" (Doc. # 12 at 9) (quoting Doc. # 11 at 21, 23). While Plaintiff does not provide a clear discussion, the court understands Plaintiff's contention to be that the new additional evidence was improperly reviewed by the Appeals Council. Plaintiff does not actually claim the Appeals Council erred in refusing to consider the materials, however, she frames her issue with the ALJ's decision as a "failure to evaluate the records and opinions of Carr Mental Wellness records and the submission of new records requires a remand." (Doc. # 11 at 23). While not explicit, taking into account Plaintiff's selective bolding of "does not show a reasonable probability that would change the outcome" and "not chronologically relevant," the court is left to interpret Plaintiff's argument as such. (Doc. # 11 at 4).

mentions the additional (more recent records) that were submitted to the Appeals Council. (R. 2, 44-58; Doc. # 11 at 23). Plaintiff contends that "[t]he failure to evaluate the records and opinions of Carr Mental Wellness records and the submission of new records requires a remand." (Doc. # 11 at 21-23) (citing 20 C.F.R. § 404.1527(b), *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962-63 (11th Cir 2015)).[8]  In addition, Plaintiff asserts the ALJ did not properly consider her own testimony because he "failed to embrace her testimony in denying benefits" despite the requirement that the ALJ "consider and evaluate the testimony of family." (Doc. # 11 at 24) (citing *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990)). For these reasons, Plaintiff argues the ALJ's decision is not supported by substantial evidence. (*Id*. at 24-32) (citing *Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278-79 (11th Cir. 2004)).

## IV. Standard of Review

On appeal, this court "review[s] *de novo* the legal principles upon which the Commissioner's decision is based." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Judicial "review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see* 42 U.S.C. § 405(g). When reviewing factual findings, the Commissioner's "findings are conclusive if they are supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted); *see* 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as

---

[8] Plaintiff cites to *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019) in supporting her argument that Carr Wellness medical records were not properly considered by the ALJ. But it appears that the language is actually taken rather from *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962-63 (11th Cir. 2015), a case Plaintiff did not cite to. (Doc. # 11 at 21-22).

adequate to support a conclusion.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see Moore*, 405 F.3d at 1211. And, "[e]ven if the evidence preponderates against the Commissioner's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin*, 894 F.2d at 1529. The court's judicial review does not include "deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore*, 405 F.3d at 1211.

Finally, as the Appeals Council's denial of a claimant's request for review of the ALJ's decision is considered a part of the Commissioner's final decision, the Appeals Council's decision "is a question of law subject to [the court's] *de novo* review. . . . [a]nd 'when the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate.'" *Hunter v. Soc. Sec. Admin., Comm'r*, 705 F. App'x 936, 939-40 (11th Cir. 2017) (quoting *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1322 (11th Cir. 2015)).

## V.    Discussion

Plaintiff asserts the ALJ did not properly consider the records from Carr Wellness nor Plaintiff's testimony and, as a result, the ALJ's decision was not based on substantial evidence. Plaintiff also asserts that the additional records submitted to the Appeals Council were not properly considered. The court addresses each argument in turn.

### 1.    Whether The ALJ's Disability Determination is Supported by Substantial Evidence

Plaintiff argues that substantial evidence does not support the ALJ's decision because he did not properly consider the evidence in step three.

Under the Act, "[t]he categories of evidence are: (1) Objective medical evidence . . . (2) Medical opinion . . . (3) Other medical evidence . . . (4) Evidence from nonmedical sources [and]

15

(5) Prior administrative medical finding[s]." 20 C.F.R. § 416.913(a)(1)-(5). In general, the ALJ is required to "consider all evidence in [the claimant's] case record." 20 C.F.R. § 416.924a(a); *see* 20 C.F.R. § 416.913.

However, even if this court reviews the evidence in the record and "may have taken a different view of it as a factfinder....if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 229-30 (11th Cir. 1991). Similarly, even if the ALJ commits an error, if that error "does not affect the outcome, it's harmless and doesn't require reversal or remand." *Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019) (citing *Diorio*, 721 F.2d at 728).

"However, [the court] will not 'merely rubber-stamp a decision ... [but] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence' . . . . [Therefore r]emand is appropriate for further factual development before the ALJ where the record reveals evidentiary gaps that result in unfairness or clear prejudice." *Meade v. Comm'r of Soc. Sec.*, 807 F. App'x 942, 946 (11th Cir. 2020) (quoting *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019)) (citing *Washington*, 806 F.3d at 1358).This means, "there must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the ALJ for further development of the record." *Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 748 (11th Cir. 2018) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)). To show prejudice, the claimant must show that "the ALJ did not have all of the relevant evidence before him in the record, . . . or that the ALJ did not consider all of the evidence in the record in reaching his decisions." *Id*. (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)).

At step three of the disability analysis, the ALJ must have substantial evidence to support a finding that the claimant's impairments, or combination of impairments, did not meet or medically or functionally equal the listings. 20 C.F.R. § 416.924(a); *see Doughty*, 245 F.3d at 1278. However, "[r]egardless of the evidence that might suggest that [the claimant's] impairments were more severe than the ALJ concluded, [if] the record as a whole contains sufficient evidence for a reasonable person to accept the ALJ's conclusion that [their] impairments did not meet, medically equal, or functionally equal a listed impairment, [then] substantial evidence supports the ALJ's decision." *Dunlop v. Comm'r of Soc. Sec.*, 518 F. App'x 691, 693 (11th Cir. 2013) (citing *Crawford*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

The ALJ takes "a three-tiered approach to determine whether the child has an impairment that meets, medically equals, or functionally equals the Listing of Impairments." *Ellington v. Astrue*, 927 F. Supp. 2d 1257, 1268 (M.D. Ala. February 26, 2013); *see* 20 C.F.R. § 416.924. "For children, [the Listing] describes impairments that cause marked and severe functional limitations." 20 C.F.R. § 416.925(a). While the listings have different severity criteria "'listing-level severity' generally means the level of severity described in [20 C.F.R.] § 416.926a(a)," determining functional equivalence for children. 20 C.F.R. § 416.925(b)(2)(ii). Meaning, "in general . . . it causes marked limitations in two domains of functioning or an extreme limitation in one." *Id*. However, unlike the third tier of step three, functional equivalence, a claimant can be "of 'listing-level severity' even if [that] does not result in marked limitation in two domains of functioning, or an extreme limitation in one, if the listing that [the ALJ] appl[ies] does not require such limitations to establish that an impairment(s) is disabling." *Id*.

As related to mental disorders, each listing is divided into paragraphs. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2, 112.00(A). "Paragraph A of each listing (except 112.05) includes the medical criteria that must be present in [the claimant's] medical evidence." *Id*. However, "Paragraph B . . . provides the functional criteria [the ALJ] assess[es] to evaluate how [their] mental disorder limits [their] functioning." *Id*. Paragraph B criteria are broken down into "four areas of mental functioning and [the claimant's] ability to function [in those areas] age-appropriately in a manner comparable to that of other children [their] age who do not have impairments." *Id*. In contrast, Paragraph C requires that "there must be a medically documented history of existence of the disorder over a period of at least 2 years, and evidence that satisfies the criteria in both C1 and C2." *Id*.

"While the ALJ is required to consider the Listing of Impairments in making a decision at step three, [the reviewing court] do[es] not require an ALJ to 'mechanically recite' the evidence or listings []he has considered." *Fleming v. Comm'r of the SSA*, 635 F. App'x 673, 676 (11th Cir. 2015) (citing *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)). "There may be an implied finding that a claimant does not meet a listing." *Id*. When implicit determinations are made regarding the criteria in a listed impairment -- and specifically those that include symptoms usually associated with those impairments -- the remainder of the ALJ's decision must reflect that the ALJ did in fact consider evidence of the claimant's symptoms. *See Fleming*, 635 F. App'x at 676-77;[9]

---

[9] In *Fleming*, the court determined that the ALJ's implicit finding that the claimant's impairments did not meet a listing was supported by substantial evidence because the ALJ stated that she had considered the claimant's listings, as well as the symptoms. Additionally, the remainder of the ALJ's decision reflected that she considered evidence of the claimant's symptoms because she "extensively reviewed" claimant's treatment notes in the RFC analysis, and "then proceeded to analyze whether [the claimant] met the paragraph B criteria for [the] Listing," specifically "finding that he had mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation of extended duration. *Fleming*, 635 F. App'x at 676-77.

*see Bailey v. SSA*, 782 F. App'x 838, 841-42 (11th Cir. 2019). However, even if the court interprets the ALJ's opinion as making an implicit finding, that implicit finding must be supported. After all, an unsupported finding "would not permit [the court] to affirm because, as [ ] precedent holds, the ALJ's 'failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal' in its own right."[10] *Schink*, 935 F.3d at 1269) (quoting *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

The court first addresses whether the ALJ properly considered the evidence in tier three (functionally equals) and next addresses whether the ALJ properly considered the evidence in tiers one and two (meet or medically equals).

> **a.  The ALJ Properly Considered the Evidence in Making His Functional Equivalence Determination**

An ALJ assessing functional equivalence, "look[s] at the information in [the] case record about how [the claimant's] functioning is affected during all of [their] activities . . . . [including] everything [the claimant] does at home, at school, and in [the] community . . . . [and] how appropriate, effectively, and independently [the claimant] perform[s] [the] activities compared to

---

[10] While the claimant in *Schink* took issue with the ALJ's RFC assessment, not the Listing determination, the ALJ in this case, made similar findings in support of his disability analysis. In *Schink*, at step two the ALJ went through four broad functional areas (referenced as "paragraph B" criteria) in determining that the claimant's bipolar disorder was a non-severe impairment. However, as the ALJ in *Schink* stated, "the mental RFC assessment used at steps 4 and 5 of the process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments." *Id.* at 1269. "In short, the ALJ provided no real assessment of how Schink's mental impairments—including depression, mania, and anger—affected his ability to work. The assessment was therefore inadequate." As a result, the ALJ's earlier error in finding the claimant's impairments to be non-severe was not harmless because even if the ALJ implicitly considered the claimant's mental impairments in the functional assessment, the court has no way of knowing whether it included the more detailed assessment required.

Similarly, the ALJ here only referenced evidence and provided discussion in the third tier (functional equivalence) analysis at step three. As discussed, this part of the disability analysis is determined by the six domains. Like the listing discussion and the RFC analysis in *Schink*, a functional equivalence discussion does not necessarily equate to the analysis needed to be done for the first two tiers of step three (meets or medically equals).

the performance of other children [their] age who do not have impairments." 20 C.F.R. § 416.926a(b). Even if "the evidence might suggest that [the claimant's] impairments were more severe than the ALJ concluded, [if] the record as a whole contains sufficient evidence for a reasonable person to accept the ALJ's conclusion that [the] impairments did not . . . functionally equal a listed impairment [then] . . . substantial evidence supports the ALJ's decision." *Dunlop*, 518 F. App'x at 693 (citing *Crawford*, 363 F.3d at 1158-59). And, even if "the evidence might suggest that [the claimant's] impairments were more severe than the ALJ concluded, [if] the record as a whole contains sufficient evidence for a reasonable person to accept the ALJ's conclusion that [the] impairments did not . . . functionally equal a listed impairment [then] . . . substantial evidence supports the ALJ's decision." *Id.*

While nonmedical evidence is relevant, the ALJ must consider all evidence in the record and "assess the interactive and cumulative effects of all the impairments for which [he has] evidence." 20 C.F.R. §§ 416.926a(a), 416.924a(a). Because an ALJ looks to the record as a whole to determine the claimant's functional limitations, it follows that the information will come from many sources, including medical sources, medical opinions, parents, and teachers. 20 C.F.R. § 416.926a(b)(3). Indeed, an ALJ looks to "all the relevant information in [the] case record that helps [] determine [the claimant's] functioning, including [any] signs, symptoms, and laboratory findings, the descriptions [] have about [] functioning from [] parents, teachers, and other people who know [the claimant]." 20 C.F.R. § 416.926a(e)(1).

Even when there is an error in interpretation, or even an error in finding that certain medical opinion is persuasive, the error may nevertheless be harmless and the ALJ's decision still supported by substantial evidence. *Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 811-12 (11th

Cir. 2017) (finding the ALJ's error in failing to state what weight she gave to medical opinions harmless because "[t]he ALJ's decision reflects that she considered the treatment notes of these medical sources, and her decision was consistent with the records."). If "the ALJ did not issue [an] unfavorable decision on that basis and gave additional reasons establishing good cause," then "that error is harmless." *Loveless v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x 866, 869 (11th Cir. 2017).

Here, the court concludes that even if the ALJ erroneously determined Drs. Heilpern and Williams' opinions were persuasive, 20 C.F.R. § 416.920b(c), the ALJ also noted that these opinions were "both consistent with the longitudinal record of evidence." (R. 16). In his discussion of the six domains, the ALJ explicitly relied on Plaintiff's testimony and two teacher questionnaires. (R. 18-24). Although the ALJ found these "opinions" to be persuasive (and may have implicitly relied on them) he did not reference them again. And, because the ALJ found them to be consistence with the record, he did have additional reasons for his disability determination. (R. 16). In addition, the ALJ had sufficient records that consisted of years of treatment notes from Carr Wellness, psychological evaluations from Glenwood, Plaintiff's testimony, and two teacher questionnaires spanning over two years. (R. 215-24, 235-46, 269-76, 291-97, 414-18, 502-31). The ALJ's finding that the DDS's Disability Determination Explanation was persuasive was at most harmless error.

Additionally, Plaintiff claims her testimony was not properly considered by the ALJ. (Doc. # 11, 24). Evidence that is arguably inconsistent with the ALJ's conclusion does not mean the ALJ did not have substantial evidence in his functional equivalence determination. *See Dunlop*, 518 F. App'x at 693. This court cannot make credibility determinations or re-weigh the evidence. *Moore*, 405 F.3d at 1211. Because the ALJ's functional equivalence determination was based on the whole

21

record, not just medical or nonmedical evidence, has substantial evidence supports the ALJ's findings. *See Loveless*, 678 F. App'x at 869. So, even if Plaintiff could show there is medical evidence that is inconsistent with the ALJ's decision, the ALJ's decisions is still supported by substantial evidence and this court must affirm. *See Dunlop*, 518 F. App'x at 693.

> **b.  The Record Does Not Support a Conclusion that the ALJ Properly Considered the Evidence in Making the Determination that R.T.C.'s Impairments Did Not Meet or Medically Equally a Listing**

Because the ALJ did not provide an explicit analysis in his determination that R.T.C.'s impairments did not meet or medically equal a listing, the court looks to the ALJ's functional equivalence discussion to determine if in fact the ALJ properly considered the evidence in question.

In order "[t]o meet a [l]isting, a claimant must have a diagnosis included in the [l]istings and must provide medical reports documenting that the conditions meet the specific criteria of the [l]istings and the duration requirement." *Johnson v. Barnhart*, 148 F. App'x 838, 840 (11th Cir. 2005) (citing *Wilson*, 284 F.3d at 1224). "The claimant has the burden of proving that his impairment meets or equals a listed impairment." *Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 920 (11th Cir. 2015) (citing *Wilson*, 284 F.3d at 1224; *Barron*, 924 F.2d at 229). If the claimant does not meet a listing, "the ALJ must consider whether [the claimant's] impairments *medically equals* the [l]istings." *Ellington*, 927 F. Supp. 2d at 1268 (citing 20 C.F.R. § 416.924(a)). "To medically equal a listing, there must be in the record 'medical findings that are at least equal in severity and duration.'" *Id.* (quoting *Johnson*, 148 F. App'x at 841).

Although part B of the listings "generally" describe limitations in functioning, it is important to remember that if the listing that is applied does not require functional limitations, then

a claimant's impairment can still meet the requirement of the listing, "even if it does not result in marked limitations in two domains of functioning, or an extreme limitation in one." 20 C.F.R. § 416.9825(b)(2)(ii). Paragraphs A and C of the mental listings still require the ALJ to look to medical evidence. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2, 112.00A(b), (c).   When a listing does not require those limitations to establish the disability, the ALJ must determine if the claimant has medical documentation of the applicable listing's criteria. *See* 20 C.F.R. § 416.925; *Ellington*, 927 F. Supp. 2d at 1270.[11]

A claimant may satisfy Listing 112.06, Anxiety and Obsessive-Compulsive Disorders, by meeting the A and B criteria *or* by meeting the A and C criteria. For A criteria, the following is required:

> Medical documentation of the requirements of paragraph 1, 2, 3, or 4:
> 1. Anxiety disorder, characterized by one or more of the following: a. Restlessness; b. Easily fatigued; c. Difficulty concentrating; d. Irritability; e. Muscle tension; or f. Sleep disturbance.
> 2. Panic disorder or agoraphobia, characterized by one or both: a. Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or b. Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).
> 3. Obsessive-compulsive disorder, characterized by one or both: a. Involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or; b. Repetitive behaviors that appear aimed at reducing anxiety.

---

[11] In *Ellington*, the ALJ did not make a reference to any particular listing, but found that the claimant's impairments did not meet or medically equal a listed impairment. Like the ALJ in this case, "the only explanation set out in the ALJ's [*Ellington*] opinion was a discussion of the six domains of functional limitations which must be considered in determining functional equivalence." The district court determined "that the ALJ conflated the analysis which must be made in step three." And, it highlighted the importance of evaluating each tier individually to determine whether the claimant meets, medically equals, or functionally equals the listings. Consequently, the court could not determine whether the ALJ's disability determination was supported by substantial evidence. *Ellington*, 927 F. Supp. 2d at 1270 (citing *Shinn*, 391 F.3d at 1278).

> 4. Excessive fear or anxiety concerning separation from those to whom you are attached.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2. The required level of severity for B criteria is met when there is medically documented finding of an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) Understand, remember, or apply information; (2) Interact with others; (3) Concentrate, persist, or maintain pace; (4) Adapt or manage oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2. For C criteria, the claimant must show their

> mental disorder in this listing category is serious and persistent; that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

*Id.* (internal quotations omitted).

In addition to requiring the same Paragraph B criteria for Listing 112.06, Listing 112.08, Personality and Impulse-Control Disorders, Paragraph A criteria include the following:

> Medical documentation of a pervasive pattern of one or more of the following:
> 1. Distrust and suspiciousness of others;
> 2. Detachment from social relationships;
> 3. Disregard for and violation of the rights of others;
> 4. Instability of interpersonal relationships;
> 5. Excessive emotionality and attention seeking;
> 6. Feelings of inadequacy;
> 7. Excessive need to be taken care of;
> 8. Preoccupation with perfectionism and orderliness; or
> 9. Recurrent, impulsive, aggressive behavioral outbursts.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2. Again, in addition to requiring the same Paragraph

B criteria for Listing 112.06, the following is required for Listing 112.11, Neurodevelopmental

Disorders, Paragraph A:

> Medical documentation of the requirements of paragraph 1, 2, or 3:
> 1. One or both of the following:
> a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or
> b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").
> 2. Significant difficulties learning and using academic skills; or
> 3. Recurrent motor movement or vocalization.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2.

In general, an ALJ may "consider all evidence in [the] case record . . . includ[ing]

information from medical sources (such as [the claimant's] pediatrician or other physician;

psychologist; qualified speech-language pathologist; and physical, occupational, and rehabilitation

therapists) and nonmedical sources (such as [the claimant's] parents, teachers, and other people

who know [them])." 20 C.F.R. § 416.924a(a). The interpretation of medical evidence "should

reflect consideration of information from . . . parents, or other people who know [the claimant],

. . . including [his] teachers and therapists." 20 C.F.R. § 416.924a(a)(1)(iii). If "a medical source

has accepted and relied on" information provided by people who know the claimant, "to reach a

diagnosis, [the ALJ] may consider the information to be a sign, as defined by § 416.902(l)."[12] *Id*.

Signs are objective medical evidence, 20 C.F.R. § 416.902(k), meaning the information provided

by people who know the claimant is considered to be objective medical evidence if a medical

---

[12] "Signs mean one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 416.902(l).

source relied on that information to reach a diagnosis. *See* 20 C.F.R. §§ 416.902(k), 416.924a(1)(iii).

Regardless of whether a medical source relied on that information to reach a diagnosis, "[w]henever possible and appropriate," statements from nonmedical sources, such as caregivers and teachers "can be important sources of information because they usually see [the claimant] every day" and provide the ALJ with information "about how [the claimant is] functioning [at school] on a day-to-day basis compared to other children [their] age who do not have impairments." 20 C.F.R. § 416.924a(a)(2)(i), (iii). "However, the remainder of § 416.924a(a) clarifies that other nonmedical evidence is relevant only in assessing 'the effects of [a child's] impairment(s) on [the child's] activities and how [the child] function[s] on a day-to-day basis.'" *Shinn*, 391 F.3d 1276 at 1284. "This is best understood as authorizing an ALJ to consider nonmedical evidence in considering whether the limitations stemming from a child's impairment are functionally equivalent to the limitations specified in the [l]istings." *Id.*

Here, the ALJ's decision did not cite to the record until discussing functional equivalence. (R. 15). Because of this, the only way the court would know if the ALJ properly considered the evidence in the first two tiers of step three is if the ALJ made implicit findings in the tier three analysis as to R.T.C.'s limitations that are specific to each listing's criteria. *See Fleming*, 635 F. App'x at 676-77; *Schink*, 935 F.3d at 1269 (11th Cir. 2019); *see also Ellington*, 927 F. Supp. 2d at 1268 (highlighting the importance of the three-tiered approach in step three and evaluating each tier individually). As the Commissioner points out, an ALJ is "not required to expressly discuss the records in detail or cite to these records throughout the decisions where, as here, it is evident from the decision that the ALJ consider[ed] [R.T.C.'s] condition as a whole." (Doc. # 12 at 10; Tr.

14-24). But here, the ALJ simply has provided enough explanation in the decision to show implicit

determination for his tier two and tier three analyses. Indeed, the only discussion the ALJ provided

regarding medical evidence is as follows:[13]

> The claimant has been diagnosed with a number of mental impairments. He has been examined and sometimes has been noted by treatment provides as presenting with an irritable mood, a short attention span, and poor insight and judgment. However, he has also been noted in treatment notes as presenting with appropriate grooming and dress, friendly, participating in many reciprocal conversations, offering information about himself, demonstrating fair judgment and insight, speaking using age-appropriate language, and testing with interruptions. He takes medication for his ADHD. His grandmother reported to treatment providers that he was doing a 'little better' and was 'less hyper and impulsive' with his medication. She also reported attending a parenting program at Glenwood and noted improvement in [R.T.C.]'s tantrums, specifically that they were less frequent and did not last as long.

(R. 16).

Even if the ALJ's discussion in tier three is sufficient to implicitly show the ALJ properly

considered the evidence in his functional equivalence determination (which is probably the case),

that analysis only relates to the ALJ's consideration of the evidence in connection with Paragraph

B because of the shared nature of the functional limitation criteria. (*See id*.). This limited discussion

does not show that the proper legal analysis has been conducted with sufficient reasoning for

---

[13] The ALJ also included "opinion evidence" from Drs. Robert Heilpern and Samuel Williams. (R. 16). However, despite this being framed as medical opinion evidence, these "opinions" are really R.T.C.'s June 20, 2017, Disability Determination Explanation that was signed off on by Drs. Heilpern and Williams. (R. 117-27). This disability determination was done through DDS, a State Disability Determination Service. (R. 116). *See* 20 C.F.R. § 402.30. When the ALJ is considering "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether you are disabled . . . that [evidence] is inherently neither valuable nor persuasive." 20 C.F.R. § 416.920b(c). The ALJ erroneously determined Drs. Heilpern and Williams's disability determinations were persuasive. (R. 16). *See* 20 C.F.R. § 416.920b(c).

Paragraph A and C. *See Schink*, 935 F.3d at 1269; 20 C.F.R. § 416.925(b)(2)(ii); *see also Fleming*, 635 F. App'x at 676.

However, as related to Listings 112.08 and 112.11, it appears the ALJ determined R.T.C. met the Paragraph A criteria. (R. 14). Because Listings 112.08 and 112.11 only include Paragraph A and B criteria, and this court determined the ALJ's tier three functional equivalence determination is supported by substantial evidence, it follows that there is enough in the record to say that the ALJ made implicit findings as to Paragraph B criteria and those determinations are supported by substantial evidence. *See Fleming*, 635 F. App'x at 676; 20 C.F.R. § 416.925(b)(2)(ii); *see also Whitten*, 778 F. App'x at 793.

As related to Listing 112.06, the ALJ found R.T.C.'s symptoms are not as severe as the listed symptoms in Paragraph A. (R. 14). However, Listing 112.06A only requires medical documentation of the requirements of paragraph 1, 2, 3, *or* 4. In paragraph 1, characterizing anxiety disorders, R.T.C. only was required to have medical documentation of one or more of the following: restlessness, is easily fatigued, has difficulty concentrating, irritability, muscle tension, sleep disturbance. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2. Therefore, R.T.C. only had to have medical documentation of difficulty concentrating. Considering the ALJ's determination that R.T.C.'s severe impairments included ADHD, and without further discussion of the medical records, it is unclear how substantial evidence would support a finding that R.T.C.'s symptoms were "not as severe as the listed symptoms" of difficulty concentrating — the only thing R.T.C. would need to show for his impairment to meet Listing 112.06A. *See Fleming*, 635 F. App'x at 676. Paragraph A does not require that there be a "severe" difficulty in concentrating. Severity of limitations is addressed in Paragraph B.

Similar to Paragraph A, Paragraph C criteria requires a medically documented history of the existence of the disorder over a period of at least two years, and evidence of both medical treatment and a claimant's capacity to make minimal adjustments to changes in his environment. *Id*.

In determining functional equivalence, and specifically in the area of the second domain (attending and completing tasks), the ALJ assessed R.T.C.'s ability to focus and maintain attention. (R. 18). The ALJ determined R.T.C. had a marked limitation in attending and completing tasks. (R. 19). Although the ALJ did not make any specific determination as to R.T.C.'s ability to focus and maintain attention, the medical evidence related to R.T.C.'s ADHD impairment shows R.T.C. had difficulty concentrating. (*Id*.). That is, R.T.C. has been treated for ADHD, a diagnosis characterized by difficulty concentrating, since at least November 10, 2016 — more than two years before the ALJ's April 10, 2019 decision. (R. 502-09). And, it is clear from the ALJ's decision that he found R.T.C. has difficulty concentrating. (R. 14, 19). And though this was not enough to find R.T.C. to have an extreme limitation, the severity of the limitation is irrelevant in Listing 112.06A. So, to the extent R.T.C. can meet Paragraph A due to his difficulty concentrating, the record shows he has had at least two years of medical treatment related to his difficulty concentrating and would meet Paragraph C1 criteria. *See id*.

Similar to Paragraph C1, what can be discerned does not provide the court with sufficient reasoning that the correct legal analysis was done related to Paragraph C2 (in determining a claimant's capacity to adapt to changes in his environment). *See* 20 C.F.R. § 416.925(b)(2)(ii); *Ellington*, 927 F. Supp. 2d at 1268. Like Paragraph A, it is unclear to what extent R.T.C. has the capacity to adapt to changes in his environment or to demands that are not already part of his daily

life. Because the ALJ has not provided this court with sufficient information to determine whether the proper legal analysis has been conducted for Listing 112.06, and substantial evidence does not support a finding that R.T.C.'s symptoms were not severe enough to meet Paragraph A, any implicit finding made for Listing 112.06A and 112.06C is not supported by substantial evidence. *See Schink* 935 F.3d at 1269.

Therefore, even though the ALJ properly considered the evidence for Listings 112.08 and 112.11, the court cannot say the ALJ properly considered the evidence related to Listing 112.06C. And, at the very least, substantial evidence does not support the finding that R.T.C. did not meet Listing 112.06A. This error was not harmless.

In conclusion, the ALJ's determination that R.T.C.'s impairments did not meet or medically equal a listing is only partially supported by substantial evidence. However, the ALJ's functional equivalence determination is supported by substantial evidence.

### 2.    Whether the Appeals Council Properly Denied Plaintiff's Request for Review After Receiving Additional Evidence[14]

Additional evidence should be considered by the Appeals Council when it is chronologically relevant, "noncumulative[,] not previously presented to the ALJ." And, it "is material when 'there is a reasonable probability that [it] will change the administrative outcome.'" *Cash v. Comm'r of Soc. Sec.*, No 4:16-CV-01635, 2018 WL 1463695, at *4 (N.D. Ala. March 23, 2018) (quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)); *see Popham v. Acting Comm'r of Soc. Sec.*, 681 F. App'x 754, 756 (11th Cir. 2017) (quoting *Hyde*, 823 F.2d at 459) (citing 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5)). When additional evidence relates to a period on or

---

[14] Although it is not clear this argument has been explicitly raised, there are hints in the filings that Plaintiff contends the Appeals Council improperly denied Plaintiff's request for review after receiving additional evidence. (R. 4, 21, 23). Out of an abundance of caution, the court addresses that argument.

before the date of the hearing decision, it is considered chronologically relevant. *Hunter*, 705 F. App'x at 939-40; *see* 20 C.F.R. § 416.1470(a)(5). However, "[e]ven records that postdate the ALJ's decision may be chronologically relevant when they assess the conditions that existed prior to the decision and there is no evidence of deterioration." *Cash*, 2018 WL 1463695 at *4 (citing *Washington*, 806 F.3d at 1322); *see Hunter*, 705 F. App'x at 940.

In general, "[t]he Appeals Council may deny or dismiss the [claimant's] request for review, or it may grant the request and either issue a decision or remand the case to an [ALJ]." 20 C.F.R. § 404.961. If new evidence is properly submitted to the Appeals Council, "a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 785 (11th Cir. 2014) (quoting *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007)) (internal quotation marks omitted). However, the Appeals Council "is not required to provide a detailed explanation of a claimant's new evidence." *Id*. In other words, if new evidence is submitted to the Appeals Council, if it "was either cumulative of the evidence before the ALJ or was not chronologically relevant, and none of it undermined the substantial evidence supporting the ALJ's decision . . . . [then] the new evidence . . . [does] not render the Commissioner's denial of benefits erroneous." *Mitchell*, 771 F.3d at 785 (citing 20 C.F.R. § 416.1470(b); *Ingram*, 496 F.3d at 1262; *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).

When evidence demonstrates a new condition that was not before the ALJ, the Appeals Council generally should provide a sufficient explanation to avoid any affirmative indication that it perfunctorily adhered to the ALJ's decision. *See Mitchell*, 771 F.3d at 783; *Mann v. Gardner*, 380 F. 2d 182, 187 (5th Cir. 1967). Otherwise, if the Appeals Council "stated it had considered the

new evidence, and denied review because 'the information did not provide a basis for changing the ALJ's decision,' the Appeals Council's explanation is sufficient, at least when the record does not provide a 'basis for doubting the Appeals Council's statement that it considered [the claimant's] additional evidence.'" *Popham*, 681 F. App'x at 756 (quoting *Mitchell*, 771 F.3d at 783-85).

The Appeals Council in this case was presented with other medical evidence and a medical opinion from Carr Wellness. Here, there are different categories of evidence that involves different standards; therefore, the court will address them in turn.

### a.   Other Medical Evidence Was Properly Denied

For other medical evidence, if "[the claimant] does not show how the extra treatment notes from [the medical source] change the weight of the evidence in [the claimant's] favor [and] these additional records appear to be cumulative with previous treatment notes that were already considered by the ALJ . . . the Appeals Council [does] not err in denying review to [the claimant], even in light of the new evidence that [he] submitted." *Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 881 (11th Cir. 2014); *see Brown v. Soc. Sec. Admin., Comm'r*, 770 F. App'x 1014, 1016 (11th Cir. 2019).

Here, the records from Carr Wellness dated January 10, 2019 through April 24, 2019 do not include any new conditions. (R. 45, 48, 51, 54). While these records do reflect medication changes, this is cumulative to the record evidence before the ALJ. (R. 414-18, 510-31). These records also include details about R.T.C. hitting himself, but Plaintiff has not explained how this changes the weight of evidence in her favor, in light of the consistent indications in the record that R.T.C.'s risk for harm was moderate and Plaintiff's reports of R.T.C hitting her. (R. 44, 50, 103,

416, 510-31) (*see Brown*, 770 F. App'x at 1016). As the Commissioner points out, Plaintiff has failed to show a reasonable probability that this symptom would have changed the outcome of the ALJ's decision or established error in the ALJ's decision. *See Mitchell*, 771 F.3d at 784-85.

However, due to the ALJ's lack of discussion in tiers one and two of the listing determination, it is unclear if the ALJ properly considered the evidence for all parts of step three. Therefore, in light of this omission, it is impossible for a reviewing court, (or the Appeals Council for that matter) to determine if the addition of the new records would have changed the outcome of his determination.

### b.    Medical Opinion Evidence Was Improperly Denied

An ALJ looking at medical opinions "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a); *see Works v. Saul*, No 4:19-CV-01515, 2021 WL 690126, at *2-4, 15 (N.D. Ala. Feb. 23, 2021). Instead, "when evaluat[ing] the persuasiveness of medical opinions," the ALJ "will consider those medical opinions . . . using the factors listed[15]. . . . the most important factors . . . [being] supportability . . . and consistency." 20 C.F.R. § 416.920c. However, the ALJ "must provide sufficient detail concerning the degree to which he finds a medical source's opinion persuasive so that a reviewing court may understand the ALJ's analysis." *Works*, 2021 WL 690126 at *15 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)); *see Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 684 (11th Cir. 2019).

---

[15] The factors are listed as follows: supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion . . . . [t]his includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirement." 20 C.F.R. § 416.920c(c)(1)-(5).

While it is true that additional evidence submitted to the Appeals Council must relate to the period on or before the date of the hearing decision, "[m]edical [opinion] examinations conducted after an ALJ's decision may still be chronologically relevant if they relate back to a time on or before the ALJ's decision." *Hunter*, 705 F. App'x at 940. If the examiner relied on medical records from the "period before the ALJ's decision and the claimant's statements about that period of time, [even if the examiner] never explicitly stated his opinions related back to the date of the ALJ's decision, [if] there was no evidence that the claimant's [functionality] declined in the period following the ALJ's decision [it follows that] the [examiner's] opinion was chronologically relevant even though [the] evaluation occurred after the date of the ALJ's decision." *Hunter*, 705 F. App'x at 940 (quoting *Washington*, 806 F.3d at 1322-23) (cleaned up). Likewise, if the claimant has functional limitations that were only observed in a medical opinion conducted after the ALJ's decision, and there is no evidence that the functional limitations existed before the ALJ's decision, then the medical opinion will not be deemed chronologically relevant. In that instance, it is proper for the Appeals Council to deny review. *See Reeves v. Comm'r, Soc. Sec. Admin.*, 817 F. App'x 898, 902 (11th Cir. 2020) ("Nothing evidences (nor does [claimant] argue) that the functional limitations observed . . . existed before [the ALJ's decision]. The district court thus determined correctly that [the medical] opinion was not pertinent."); *see Washington*, 806 F.3d at 1320-21.

Here, the Appeals Council improperly determined that the medical opinions did not relate to the period at issue. While the examiner at Carr Wellness did not explicitly state that medical records from the period before the ALJ's decision were relied upon, the evaluation occurred only three months after the ALJ's decision. (R. 25, 41). In addition, this was the same examiner who

saw R.T.C. on earlier appointments at Carr Wellness. (R. 414-18, 510-31). The opinion observes functional limitations that existed before the ALJ's decision. (*Id*). Because the medical opinion relates back to a time on or before the ALJ's decision, the Carr Wellness medical opinion was chronologically relevant. *See Hunter*, 705 F. App'x at 940. However, the new evidence would have changed the outcome of the decision. *See Popham*, 681 F. App'x at 755.

Because the medical opinion from Carr Wellness is persuasive, there is a reasonable possibility it would have changed the ALJ's decision, rendering the denial of R.T.C.'s benefits erroneous. *See Mitchell*, 771 F.3d at 785. Meaning, due to the additional evidence, even if the ALJ properly considered the evidence before him and there was substantial evidence to support the ALJ's decision, the Appeals Council should have either issued a decision or remanded the case back to the ALJ. *See* 20 C.F.R. § 404.967.

## VI.    Conclusion

This court concludes that the ALJ's determination that R.T.C.'s impairments did not meet or medically equal Listings 112.08 and 112.11 are both supported by substantial evidence and the proper legal standards were applied in reaching those determinations. In addition, the Appeals Council properly denied review of other medical evidence as it would not have changed the outcome of the ALJ's decision.

However, because the ALJ failed to include any discussion as to Listing 112.06, and the required medical documentation of this listing's criteria, the ALJ's determination that R.T.C. did not meet or medically equal Listing 112.06 is not supported by substantial evidence. In addition, the Appeals Council improperly denied review of the medical opinion from Carr Mental Wellness. Therefore, the ALJ's final decision is due to be affirmed in part and remanded in part with

instructions for the ALJ to provide specific analysis of the medical record in his Listing 112.06 determination, taking into account the new additional medical opinion evidence from Carr Mental Wellness.

**DONE** and **ORDERED** this August 24, 2021.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE